We have one case on the calendar this morning, W. J. v. HHS, 2022, 2119. Ms. Oliver. First, Ms. Oliver, the court would like to thank you for agreeing to serve as the amicus. It's my pleasure. Thank you. And secondly, I want to ask, are you sure you don't want to reserve time to the button? If I may, I would prefer to reserve three minutes. Three minutes, all right. Please proceed. Thank you. May it please the court, Angela Oliver as amicus on the issue of equitable tolling. This case presents an important question regarding a child's ability to pursue his rights under the Vaccine Act. And in denying equitable tolling, the special master and court of federal claims erred by focusing solely on whether the child has a parent. But that should not be dispositive of the child's rights. Instead, the court should look to whether the presence of a parent was sufficient to protect the child's rights, such that being a minor was no longer an extraordinary circumstance. And you argue that that wasn't sufficient in these circumstances, in part because the parents were pro se and retained counsel. And in preparation for the argument, we've looked at cases. The general rule seems to be in the federal system under Rule 17 that parents without counsel cannot represent a child. There are some exceptions to that. There's a court of federal claims case that says maybe this Vaccine Act context is an exception. But I guess that raises two questions. One of which is can this minor be represented by his parents without counsel? And is that issue waivable? Has it been waived? And second, if that's the general rule about parents not being able to represent a minor without counsel, how does that bear on the issue of equitable tolling? Even if we assume that the parents can represent the child, doesn't that general rule suggest maybe that you should give some weight to the fact that the parents are pro se? It's a complicated question. Sure, and I'll try to address it in turn. First, I don't think that's a waivable issue because at the end of the day, we have to look at whether the child's rights are protective. The child, of course, cannot waive that. Well, when I said it's a waivable issue, I was asked two separate questions. One, is this case even properly before us, properly before the court of federal claims, with the parents without counsel purporting to represent the child under cases in general under Rule 17? That can't happen. The parents can't represent the child. So is that a waivable issue? Do we have to be concerned that we should dismiss this case, for example, or remand it to have the court of federal claims consider whether to appoint counsel or whatever? So that's one issue. The second issue is how does all of this bear on the equitable tolling issue? Absolutely. Okay, so as to the first issue, I think there is an important question about whether a parent can proceed on behalf of a child per se. Typically in federal courts, the rule is no. Courts typically dismiss the case without prejudice and instruct them to hire counsel. And this is based on the text of 28 U.S.C. 1654. That's where the jurisprudence comes from. And the text of the statute, if I may, it reads that an individual can proceed with their own case personally or with counsel. And so courts typically use that own case language to say, okay, you're not proceeding with your own case. You're proceeding with your child's case. So that's where that case law comes from. I think there is a question of statutory interpretation in 1654 about whether that applies to the court of federal claims. The statute says courts of the United States. And when you look at other statutes around 1654, it's a little ambiguous whether the court of federal claims is considered a court of the United States in that context, such that the statute would apply. So there is an open question there. And there is, as you recognize, a CFC case. But I think overall, the important point is if they can proceed on behalf of a child without counsel, that could significantly hurt the child's rights. And that's an even more important circumstance for the courts to step in and be cautious about making sure the child's rights are preserved. And equitable tolling, I think, is one of the ways that the court can ensure that those rights are protected. In other words, offering more leniency in that context. So I do think it's an open question. I don't think it can be waived because it's an issue of the child's rights. And children are always wards of the court. And the courts typically do look out for the interests of children. A similar example would be in district court. When parents litigate on behalf of a parent, even with counsel, and they enter a settlement, often district court judges will review the terms and ensure it's fair for the child. So there is an extra degree of courts looking out for the interests of the child in this context. So where, in your view, does that leave us in this case? If it's an issue, it's a right of the child, this right has not been explored as best as I can tell from the record by us or in the Court of Federal Claims. Do we just send it back to the Court of Federal Claims to straighten out whether the child wants the parents to proceed per se and presumably factor that into the equitable tolling analysis if they can get over this hurdle? Sure. So as a matter of statutory interpretation, this court could certainly address that in the first instance on the question of whether a parent can proceed on behalf of a child without counsel. And if the court would like additional briefing on that specific issue, I'd be happy to assist. But that's a question that this court could answer and then provide guidance to the special master in the Court of Federal Claims on remand as to how they should proceed, including potentially appointment of counsel if that's the outcome of the court's analysis. So turning back to, I think, the issue of equitable tolling, obviously the pro se context is a significant factor here, but I think there are other factors and facts that the court needs to consider. Of course, we know from this court's decision in KG that simply having a guardian is not necessarily sufficient to alleviate extraordinary circumstances of incapacity. In that case, that was mental incapacity, and here we're discussing minority incapacity. Of course, a child cannot bring their own claim. And the question in that case was whether the guardian's presence was sufficient to alleviate the extraordinary circumstance of the incapacity. And I think another way to phrase that is just are the disabled individual or the child's rights sufficiently protected by the guardian or the parent such that we don't have those extraordinary circumstances any further? I think that extends naturally to the context of children. The minority status has a potential to significantly impact and interfere with a parent's ability to protect a child's rights because it can prevent them from understanding that a right is even being lost. So, for example, a child may not be old enough to communicate pain and symptoms they're experiencing, so the parent will be unaware of the symptoms or the full range of symptoms, also unaware of the timing. But the large majority of these vaccine cases involve minors, and so minorities tend not to be in exceptional circumstances for equitable toll. I think two things. I think… It's the usual circumstance. Perhaps. I think of late, since the Vaccine Act now includes flu vaccines, there's actually a significant number of petitions that are being filed by adults based on the flu vaccine, and so that is kind of a different consideration there. But I understand, of course, the purpose of the Vaccine Act was geared originally towards children. But I think that there are inherent reasons why you have to look out to whether the child's interests are protected because of their minority status. So for many injuries, for example, in the Vaccine Act table, some of the symptoms that are listed are just normal symptoms of being a child. So, for example, one injury lists as symptoms anguished crying and irritability, and that, of course, is just the nature of being a child. And so I think some of those considerations and the inability to explain the timing and what's going on in the child's experience shows that in some cases, depending on the cause of action, depending on the facts at issue, there's going to be situations where a parent cannot adequately represent the child's interests because they just don't have the information. Now, it's going to be a case-by-case issue. I'm not suggesting that in every case the fact that you're a minor is going to be dispositive of the equitable tolling inquiry. I think it's going to depend on how and whether the parent is sufficiently effective. I think it also depends on the balance of the prejudicial equities. So in this case, balancing the equities, there's very little, if any, prejudice to the government. There is a fund dedicated specifically for compensating Vaccine Act claims. Every vaccine that's given has a tax. It goes into a fund. It's invested. So this is not an issue of an unexpected hit against the public fisc. The other issue— Well, maybe not, but, I mean, as with any statute of limitations, it's designed to prevent evidence from going stale. And so in that sense, the belay can prejudice the government because it makes it more difficult for them to make out their case, right? Potentially, although I would argue the staleness of the evidence would make it more difficult for a plaintiff to potentially make out their case. Well, it makes it difficult for both of them, right? Sure, sure. It's not as though the government doesn't care or is unaffected by the belay. Sure. And there could be, you know, in a fact-by-fact analysis in each case, you know, the staleness of evidence could counsel against equitable tolling in a particular case. And I'm mindful that that could impact the analysis because the prejudice analysis would be different. We don't have an argument from the government based on that in this case. At most, it's just the delay of the timing. But if Congress had been particularly concerned about the timing of these claims, they could have also included a statute of repose, like they did elsewhere in the Vaccine Act, that would cut off claims regardless of any equitable tolling. And, of course, we know from supreme case law that statutes of repose are not subject to equitable tolling. Well, but we've already held there is equitable tolling under the statute, so we don't need to worry about that. In the statute of limitations, sure. But had Congress put in a statute of repose, I think that would have cut off claims and solved the prejudice to the government if there was a serious concern of Congress. But significantly, there is prejudice here to W.J. And that prejudice is unique in that it extends not just to his federal claim. Of course, he's missing the opportunity to bring his Vaccine Act claim. But it extends far beyond that, too, to his potential state law remedies. Can I ask you, in this case, the special master seems to have understood that equitable tolling exists and didn't just treat the presence of the parents as a per se bar to equitable tolling, but actually looked at a number of factors that we had outlined in the KG case. Isn't that what happened here? Respectfully, I don't think that's the best reading of the special master in court of federal claims opinions. I think at Appendix 38, for example, this special master says that parents must file within the statute of limitations. And that is, quote, true for all petitions brought on behalf of all minors. And in the court of federal claims, similarly said Appendix 18, that, quote, as in any vaccine case involving a child, close quote, the parents can file. And so I think they are viewing that more as a broad or certainly at least a default rule. And I didn't see a lot of discussion of the other particular facts of this case outside of fraudulent concealment, which I think is a separate issue that doesn't address the same issues. Didn't the special master talk about the timing of the vaccine of the vaccination, the fact that the parents were representing the child's interests, you know, vis-a-vis doctors, et cetera, the parents' mental capacity? Didn't the special master go through a few of those factors? The special master did mention those, but I don't think those are the nature of the factors that KG was talking about. So I don't think the special master particularly focused on how the inability to communicate and inability to understand symptoms could have impacted the parents' ability to protect the child's rights, to understand, you know, whether the parents even knew that they should be protecting the child's rights in this context. So I think the most appropriate course would be to further clarify what is relevant here, particularly in the context of minority tolling, in the equitable tolling context, and remand, of course, for the special master to consider a variety of factors with the focus being on whether the child's rights were sufficiently protected and considering all of the ways that the fact that W.J. was a young child and a lot of this was developing could have impacted the parents' inability to bring the claim. Okay, but before we run out of time, I would like to ask about 2501, which the parents raise in their supplemental filing. On the face of it, it seems to be an unqualified provision for a three-year period to file after the child reaches majority. So why wouldn't 2501 apply in these circumstances in this case? I do think it's a creative argument. I think the difficulty with it is potentially that two things. One, I don't see a clear indication that it's intended to apply to the Vaccine Act. It just says anything within where there's a petition before the Court of Federal Claims, which covers the Vaccine Act, doesn't it? Yes, although I think that was more in the context of the Tucker Act. And I think that's a little bit of a different context. That's a jurisdictional statute of limitations. It's a different context, but the Supreme Court keeps telling us to look at the plain language. The plain language, it seems to me, is a bit hard to get around. Sure, sure. And that's the best answer I have at this time on that issue. I just think it's perhaps difficult to see how it applies to the Vaccine Act other than, as you say, just the plain language. But if the court would like further briefing, I'd be happy to file a letter brief addressing specifically that question. The last thing I'd just like to mention is I think there is one case cited in the government's brief that I think is particularly helpful in the context of understanding why equitable tolling based on minority makes sense. This is Booth v. United States, a Ninth Circuit opinion from 2019. And there the court addressed arguments based on minority status in a couple different contexts, but one was equitable tolling. And the court recognized there that minority status by itself is not sufficient to warrant equitable tolling. Okay. But the court also said that particular circumstances connected to one's age could support equitable tolling. And one example is where the cause of action is not reasonably knowable by the parents. And if I may go into my rebuttal for about 20 seconds. You were going into – you were past – you used up your rebuttal. Finish your thought. Oh, I apologize. I was going to briefly address diligence, but I can put that aside if the court would prefer me to sit down. We will give you your full rebuttal time back. Thank you. Mr. Ross, if you need to get an extra time, that will be all right too. Okay. Thank you, Your Honor. Cason Ross for the federal respondent. I think I'll start with the two issues that Judge Dyke identified in the beginning presentation. First, 28 U.S.C. Could maybe you start with 2501? That was exactly where I was going. So that statute applies to the Tucker Act and claims brought under that statute. Well, sure, but doesn't the plain language cover this vaccine act also? I don't believe so, Your Honor. And, in fact, I'll point the court to page 44 of the appendix in which the petitioners specifically invoked the jurisdictional provision of the Vaccine Act. That's section 12, which affords the special masters and the Court of Federal Claims jurisdiction over claims brought under the vaccine compensation program, as here. And I'll additionally point the court to Ontario power generation in the United States, which is – it's not in the brief, so I'll give you the citation, 369F3R1298, in which case the court specifically delineated the kinds of cases brought under section 2501, which is namely contract claims against the government, not – But that's not what 2501 says. I mean, I'm just – I'm not understanding why the plain language doesn't cover this because this is – refers to petitions in the Court of Federal Claims. The Vaccine Act says this is a petition in the Court of Federal Claims, provides for a three-year period after majority. What's the language there? You know, you're really talking about the context, the purpose of it, while you're at the Tucker Act. But the language doesn't say anything about the Tucker Act. I believe section 2501 is a statute of limitations provision for the jurisdictional provision of the Tucker Act. And the Tucker Act – But it's not just that. It has this provision in there, which seems to be so broad as to cover the situation. Why doesn't it? I think at minimum the Vaccine Act provides a more specific statute of limitations, in which case the specific government is the general. Well, sure. The argument here is not that it supersedes the Tucker Act statute of limitations. There's another paragraph in there. It says simply, a petition on the claim of a person under a legal disability – that's the minor child here – at the time the claim accrues may be filed within three years after the disability ceases. I mean, there it is. Correct, but section 12 of the Vaccine Act provides specifically for jurisdiction – it's a separate jurisdictional provision. The claims at issue here are not subject to section 2501. So I understand the plain language argument, but that provision is simply inapplicable here. Petitioners did not invoke the special master's jurisdiction – Are you saying – I'm not familiar with Ontario power. That's a decision of our court? It is, Your Honor. And are you saying we already addressed this question there? I believe this court construed the kinds of claims that are brought under the Tucker Act, which includes section 2501, such that the claims brought here under the Vaccine Compensation Program are not subject to that jurisdictional provision. So it doesn't address this provision of 2501, right? Which does not, Your Honor? The Ontario power decision? No, it does. It does what? It addresses that provision, saying the kinds of claims brought under – and they're subject to that jurisdiction. It addresses the provision I read about Toluene? I believe so, and it explains the kinds of claims – it articulates the kinds of claims that are normally brought under the Tucker Act, which are not the kinds of claims brought here. I take it it does not expressly consider whether it also applies to Vaccine Act cases, is that right? That's true, but that's because there's a separate statutory provision that provides the Court of Federal Claims with jurisdiction to hear of the Vaccine Act claims brought under that program. So the Tucker Act is entirely inapposite here. It has no bearing on this case because – and petitioners, in fact, did not invoke the jurisdiction of the Court of Federal Claims by citing that case. They've now belatedly cited that case. Do you agree that if this paragraph that I'm referring to were a separate statute, that there would be no argument for not applying it here? I'm sorry, I don't understand your question. If the provision of 2501 that I referenced were in a separate statute, there would be no argument for not applying it in the Vaccine Act context, would there? I'm sorry, I still don't understand. It is a separate statute. No, but if it were divorced from the Tucker Act statute of limitations, if that paragraph were alone as a separate statute – Applying to any claim brought in the Court of Federal Claims, is that – Yeah. I'm not sure that I'm prepared to concede that point now without considering it further, but all I will say, again, is that in enacting the Vaccine Compensation Program, Congress created a comprehensive scheme to be able to consider particular claims brought under that program. Among those is Section 12, which specifically provides jurisdiction of the Special Masters and the Court of Federal Claims to hear those claims brought under this program. The Tucker Act has no bearing on this case, and the citation of that here is merely a distraction. Shall we move on to accurable tolling? Sure. So with respect to the concerns raised with respect to Rule 17, I will point the Court to the cases cited in the government's brief, GLG and Price, in which this Court affirmed – or panels of this Court affirmed the dismissal of claims brought pro se by parents on their children's behalf. That doesn't consider the issue, right? I think the Court must have implicitly considered the issue. We have plenty of cases that say if it doesn't explicitly consider it, it's not binding authority. The Rule 17 issue is also not squarely presented here, Your Honor. So in those cases, GLG and Price, the panels of this Court affirmed dismissal of claims that were not timely brought by parents who were proceeding pro se. That's not citable as authority on this point. Excuse me? They're not citable as authority on this point. They didn't consider the issue. They didn't discuss it. Respectfully, Your Honor, that issue is also not presented in the briefing in this case. Well, it is to the extent that they are arguing that the fact that the parents were pro se ought to resolve an equitable tone. To the extent there is any question of W.J.'s parents' advocacy on behalf of their child, the record is replete with examples in which they, throughout his life, have been incredible advocates and parents for him. They've proceeded to provide individualized educational programs. That's page 200 of 201 and 220 of the appendix. They've advocated for various medical diagnoses and struggled with caring for him throughout his life. There's no indication that at any point they were anything but excellent parents, repeatedly taking him to the doctor, repeatedly getting different diagnoses for various problems, ostensibly, and as they contend, associated with the measles, mumps, rubella vaccine. But at all points, they have been incredible parents for him. They belatedly filed a claim over 10 years after some of those symptoms, which they allege were connected to a vaccine, manifested. Did they bring suit in the court of federal claims? But there's no basis under the Vaccine Act to consider that belated filing as some sort of extraordinary circumstance to warrant equitable tolling. There is no minority basis for, excuse me, a child being under the age of 18, on its own, is not an extraordinary circumstance that would merit equitable tolling. There is no impediment to the parent's filing. What about the idea that in this context, they will pro se, this is a complicated statutory scheme, and at least ought to be a factor in considering whether it was an extraordinary circumstance that would support equitable tolling. I mean, it's not a simple thing to figure out what the statute provides. We've had cases, multiple cases, explaining how to proceed under it. It seems to me quite difficult for someone who's not a lawyer, a parent who's not a lawyer, to navigate this. Certainly, I agree, Your Honor, but that's exactly why Congress provided an incredibly favorable scheme for attorney's fees. Any claim brought in good faith and on a reasonable basis, even if you don't prevail, is able to get attorney's fees. And there's no indication here that W.J.'s parents even sought the assistance of counsel, not that they'd even retained counsel. Yeah, but the question is, should the child suffer from that? I don't know that's the wrong question to ask, Your Honor. Rather, it's whether the parents were derelict in some duties of their guardianship. The Vaccine Act specifically provides that parents may bring suit on their child's behalf and defines a legal representative as one that is subject to the duties as required under state law. If the parents were derelict in some sense, or W.J. didn't have advocates for him, then maybe the court could consider. As it did in KG, that equitable tolling might be warranted, but that is certainly not the case here. This is a case, as the court explained in Kluwer, it's just a garden variety case of excusable neglect. Isn't this where Rule 17c comes in because other circuits that have considered it seem to say that the right to give up the right to counsel is a right that the child in this instance holds, and other circuits at least don't let the parents give up the right that the child has to be represented by counsel. It's not a question of how much they love and support and have the best interest of the child at heart. It's that right to proceed pro se that only the child, other courts have said, can give up. And since the child here is unable to give it up, the case can only proceed if the parents have counsel. Why should we not follow that type of reasoning, and if so, where would that leave us? So at the outset, I will apologize by saying that I'm not sufficiently familiar with those cases. And the issue was not briefed. I understand that. I will say, in the alternative, that the Vaccine Act, as this court and the Court of Federal Claims has repeatedly said, provides a very flexible scheme for representing claimants, and provides a number of, specifically by statute, provides a number of ways in which guardians or legal representatives can bring claims on an injured person's behalf. So Congress, I think, contemplated that there would be circumstances in which the claimant, him or herself, would not be able to choose representation, but would instead be represented by a guardian, as here. And I think, naturally, if those guardians choose not to obtain legal representation, despite the Vaccine Act's very favorable scheme for providing for attorney's fees, for example, and I think you can naturally construe Section 15 as Congress's incentive, effectively, for parties to obtain counsel, as they often do, and that it's not necessarily the same framework. So I think that, while I'm not familiar exactly with the other courts of appeals decisions that you've cited, Judge Stark, that the Vaccine Act is at least distinguishable as a legal matter because of the very favorable attorney's fees regime that's available here. Then I guess my next question would be, doesn't all that have to be factored in to an extraordinary circumstances analysis? And in that regard, I would point you to what we said in KG, where we remanded for the court to consider all the relevant factors in the first instance. Not sure that we could say here that all the relevant factors have been considered when, among other things, this question of, did the child here have a right to counsel that the parents, maybe knowingly, maybe unknowingly, gave up, was not apparently considered. So at the outset, I will note that the court reserved the question over whether equitable tolling would be warranted in KG and remanded for further consideration of that question. Based on all the factors. Right, of course, but did not opine on whether it would have been appropriate in that case. That was a factual question. How could we say today, in this case, that we're reviewing that all the relevant factors were considered? Right. I think I'll point the court to what I think is the third factor that the KG panel identified, which is the extent to which the claimant's mental incapacity interferes with her relationship and communication with her guardian. And that factor might be relevant here in the sense that if there was any evidence in the record, which I don't believe there is, of whether WJ's incapacity has at all interfered with his parents' ability to advocate on his behalf. Again, I will note that his parents were able to identify educational plans for him, adequately administered his medications. How does that show that they're able to represent him in a legal context, which you admitted a few minutes ago is complicated and difficult? I mean, the fact that they can represent him in dealing with doctors is not the same thing as saying they can represent him in dealing with the court. At risk of repeating myself, and I think you don't agree with me, but panels of this court's decisions in GLG and Price say exactly the opposite. I realize that the issue of whether pro se representation is a question for equitable tolling is warranted was not squarely presented there. But if anything, those decisions at least demonstrate that this court has rejected the notion that equitable tolling should apply simply because a petitioner is pro se. That is an argument that's been, I think, adequately raised here, and not one that petitioners have ever called into question. Indeed, Amicus' brief itself invited the parents to identify any additional considerations that might bear on whether equitable tolling is warranted here, and they identified none. They did not file a supplemental brief, despite the court's invitation to do so. Here? Here. They did? Only after the court scheduled oral argument and indicated that only the government and Amicus would argue, did they seek leave to file a memorandum in lieu of oral argument. And in that filing, they only now identified the Tucker Act argument, which, as I said earlier, is a red herring here and is merely a distraction. But at least they haven't identified any additional considerations that would warrant equitable tolling here to demonstrate that they were confused by the Vaccine Act or that they didn't understand that they should have filed earlier. But there's no indication that they never attempted to do so. And this court in Clure specifically rejected the notion that the Vaccine Act includes a so-called discovery rule. Rather, the text of the Vaccine Act requires that the claim accrues at the first symptom or manifestation of an injury. It's not when the parents knew about it, but when the symptom actually happened. Let me be clear about one thing. Is the government's position that under the Vaccine Act, the parents can represent the child even without counsel? Yes. Absent additional questions, we urge the court to affirm. All right. Thank you. No questions. Thank you, Mr. Ross. Ms. Oliver, you may take two minutes if you need to. Thank you, Your Honor. The focus here needs to be on ensuring that the child's rights are protected. And part of that may be ensuring that they have access to counsel to represent their claims. The lack of counsel also goes to the equitable tolling analysis. It's not just the lack of counsel, but also the other factors that we've talked about today. For example, the fact that minority status makes it difficult for a parent to understand, in many cases, that a cause of action has even accrued. The lack of understanding of symptoms, pain, the timing of symptoms, all of that goes to whether that parent would understand that there is an injury and a causation that they should be protecting and considering legal rights to assert on behalf of the child. And without the parents having that full set of understanding, there is no way that they can adequately represent the child's rights. This is not going to be a dispositive rule in every case. In many cases, a parent will be fully adequate to protect those rights based on the knowledge that they have. But in a lot of cases, such as this one, there are difficulties based on the minority status, based on the lack of communication, that justify equitable tolling. And on top of that – What do you mean by minority status? Sure. Just the fact that he is under 18. And particularly, I think this goes to the inability to communicate and understand the impact of symptoms that are occurring in younger children. Sometimes those symptoms are just naturally differences in development as children get older. So it makes it difficult for a parent to be operating with a full set of facts. I appreciate your comment that some of these cases involve adults. But the large majority of these cases involve parents who observe symptoms of illness in their children and they take care of them medically. So they're not unable to observe and take cognizance of the illnesses of their children. I see that my time is about to expire. May I answer your question? Thank you. So I think just because a parent is able to take care of their child's medical needs and take them to the doctor and try to figure out what's going on, that's always going to be their priority. And in fact, in cases where they're having significant symptoms, the parents are going to be focused on that. I don't think that necessarily puts the parent on notice that there are Vaccine Act injuries that they may need to be asserting. Particularly when some of those symptoms that might kick off a statute of limitations are just normal symptoms of being a child or could be attributed by a doctor to be something else. I think it's going to be a case-by-case inquiry about what is fair as far as whether the child had an opportunity to have their rights protected. Thank you. Thank you. The case is submitted. Thank you for your presentation.